Kinsey C. J.
There are three grounds upon which the counsel for the prisoner found their application for a new-trial.
íst It has been contended that the Judge who presided at the trial misconceived the law, when he charged the jury that to excuse the commission of homicide as done se defendiendo, it ought to appear the killing was through mere necessity, and to prevent his own destruction; otherwise it amounted' to manslaughter. The counsel have urged that this principle was laid down by the court in too broad and unlimited a manner: that the apprehension of an enormous battery would equally excuse the killing of an adversary; and the circumstances of this case warrant the application of this principle of defence.
2d The Judge was wrong in admitting parol evidence of a confession of the prisoner, variant from the written confession, taken in a more solemn and authoritative form.
3d That evidence of the general characters of the prisoner and the deceased was improperly overruled.
*429 Willi regal'd to this last point I think clearly that the court was mistaken. The defendant has an unquestionable right to adduce testimony tending to show his general good and p&cifick character, and to let it have w hat weight it may be entitled to with the jury. Still if evidence of this kind is admitted, I should think it my duty to inform the jury, that it should receive little attention in any case, unless where the fact is itself dubious, or where the charge rests altogether upon presumptive testimony. Against the positive declara» tions of honest witnesses it ought not to be permitted to weigh.
Upon the second point the court was unquestionably right» No authority has been adduced by the prisoner’s counsel to support the doctrine for which they contend, and the argument that has been offered is far from convincing. I take the law to be that parol evidence of the confession before the Justice would be improper; blit confessions made at another time and place, although different from that made before the Justice are evidence. Indeed upon any other principle this monstrous consequence would ensue, tbat if a criminal had twenty times acknowledged the commission of a fact, and should afterwards refuse to confess it, upon an examination before the Justice, for the very purpose of preventing any proof of his former acknowledgements, he would by his own act defeat the ends of Justice. Fearshire’s case Leach 446. and The King v. Jacobs & al Ibid 285. establish this fully.
We now come to the most material question in this case, viz. whether the offence proved to have been committed by the prisoner comes up to the legal signification of the wort! manslaughters — -and I am of opinion it does.
A reference to NailoFs case (a) is sufficient to remove all doubt upon this point. In that case the prisoner was indicted for the murder of Ms brother, and the circumstances as they appeared in evidence were, “ that the prisoner on the night the fact was committed came home drunk. His fa- “ ther ordered him to go to bed which he refused to doj 48 whereupon a scuffle ensued betwixt the father and son» ;8 The deceased who was then in bed, hearing the, disturbance. *430 « g0£ up, and fell upon the prisoner, threw him down, and “beat him upon the ground; and | there kept him down, so “ that he could not escape, nor avoid the blows. While they “ were thus striving together, the prisoner gave the deceased “ a wound with a pen-knife, of which wound he died.” Some doubts existing in the minds of the Judges, a special verdict was found stating these circumstances, and upon a conference with all the judges of England it was unanimously holden to be manslaughter — for there did not appear to be any inevi46 table necessity so as to excuse the killing in this manner.” In a note to this case, which I presume to be Foster’s, it is said, the deceased did not appear to aim at the prisoner’s life, but rather to. chastise him for his misbehaviour and insolence towards his father.
In the present case, the attack of the deceased was without any kind of weapon that might have rendered it necessary for the prisoner to avail himself of the instrument which occasioned the death. On his own confession, much less would have been sufficient, and I consider it therefore as clearly manslaughter.
What I particularly allude to, is the declaration of the prisoner to the witnesses who have been sworn, made soon after the affray, that he- could manage the deceased as he pleased, and that he was no more than a child. These declarations show there could have been no necessity for the weapon, and they are proper to be relied upon. See also the case of Rex v. Oneby 2 Ld. Ray. 1485.
The observations I have made render it unnecessary to enter further into the discussion of the question that has been raised, than to remark, that in,my opinion, no man is justified or excusable in taking away the life of another unless the ne'cessity for so doing is apparent as the only means of avoiding his own destruction or some very great injury, neither of which appears to have been reasonably apprehended in the present case.
Upon the whole case I am of opinion that there should be no, new trials for if justice has been done, and if the result of another trial ought to be the same as this, and the court are decidedly of this opinion, though the Judge may have direct» *431 ed the jury improperly, or have rejected evidence which strictly speaking ought to have been admitted, yet a new trial should not be granted and would in no degree advance the ends of justice. Edmonson v. Machell, (a)
In considering this question, I have purposely avoided mentioning many circumstances which operate strongly against the defendant; — which show that he was full as eager for the combat as the deceased; — -that he manifested no inclination to decline the affray, which led to the unhappy circumstance which has brought down a just but severe punishment upon himself»
New Trial refused,

 Fester 2?8.

 2 T. E. 4»